IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAUL EZRA RHOADES,  )  ) | Case No. CV 93-0156-S-EJL |
| Petitioner,  ) | (Bonneville County) |
| )  v.  ) | **CAPITAL CASE** |
| )  A.J. ARAVE, Warden,  ) | **MEMORANDUM DECISION** |
| ) | **AND ORDER** |
| Respondent.  )  _____  ) | |

Before the Court in this capital habeas matter is the parties' briefing on whether the Court should hold an evidentiary hearing with respect to Petitioner's claims of ineffective assistance of counsel. The Court has determined that this matter will be resolved on the record without oral argument. D. Idaho L. Civ. R. 7.4(d); 9.2(h)(5).

The Court will reserve its ruling whether an evidentiary hearing will be required in the following two areas of ineffective assistance: (1) counsel's alleged failure to conduct a reasonable mitigation investigation in anticipation of the penalty phase; and (2) counsel's alleged failure to present expert testimony to rebut the State's physical evidence. (Claim 17, subparts 2, 8, 9, and 22). The Court will make a final decision whether a hearing will be required on these matters after the parties have submitted supplemental briefing on the merits of all non-dismissed claims. The Court concludes that no other claims require an evidentiary hearing.

**Memorandum Decision and Order - 1**

# I.

## BACKGROUND

Petitioner has been convicted of murder, and other felonies, for the shooting deaths of Stacy Baldwin in Bingham County, and Susan Michelbacher and Nolan Haddon in Bonneville County. This case arises from the judgment in the Michelbacher matter, for which Petitioner has been sentenced to death.

John Radin and Stephen Hart, members of separate law firms, were appointed to represent Petitioner against the charges in Bonneville County, and continued to do so through the sentencing hearing in the Haddon matter. (R. p. 15.) The court then permitted Hart to withdraw, and Radin's law partner, Russell Webb, took his place during the post-conviction proceeding. (Post-Conviction R., pp. 20-22.) Radin and Webb represented Petitioner during his consolidated appeal to the Idaho Supreme Court.

Petitioner contends that his attorneys were constitutionally deficient in numerous respects at trial, sentencing, post-conviction, and on appeal. (Docket No. 175, pp. 35-50.) This Court had previously dismissed all of these allegations as procedurally barred because Petitioner had not raised them in state court, but it has since reconsidered that decision in accordance with the Ninth Circuit's decision in *Hoffman v. Arave*, 236 F.3d 523 (9th Cir. 2001). (Docket Nos. 95 & 200.) The Court has allowed the parties to submit supplemental briefing to separate triable issues of ineffective assistance of counsel from issues that can be decided as a matter of law. The matter is now ripe for a decision.[1]

---

[1] The Court recently denied Petitioner's request to stay this case pending the completion of DNA litigation in state court. (Docket No. 245.) The Court indicated that it would consider revisiting the issue if Petitioner could show significant development in the state court DNA

**Memorandum Decision and Order - 2**

## II.

## LEGAL STANDARDS

Because Petitioner initiated this case before the enactment of the Antiterrorism and Effective Death Penalty Act, the Act's restrictions on evidentiary development in federal court are not applicable. *Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997).

An evidentiary hearing is mandatory in a federal habeas case when the following two conditions have been satisfied: (1) the petitioner has presented a "colorable" claim on the merits, meaning he has alleged specific facts that, if proven to be true, would entitle him to habeas relief, and (2) the state court trier of fact has not reliably found the relevant facts after a full and fair hearing. *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992); *Townsend v. Sain*, 372 U.S. 293 (1963). The corollary to this rule is that no federal hearing is required when the claim can be resolved as a matter of law, or when the material facts are contained within the existing record. *Hendricks*, 974 F.2d at 1103; *Pizzuto v. Arave*, 280 F.3d 949, 973 (9th Cir. 2002). Conclusory or speculative allegations also do not require a hearing. *See Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994). However, even when an evidentiary hearing is not mandatory, the court retains the discretion to hold one. *Seidel v. Merkle*, 146 F.3d 750, 753-55 (9th Cir. 1998).

Whether a habeas petitioner has alleged a colorable claim for relief will turn on the elements of the constitutional claim. To establish a colorable violation of the right to the effective assistance of counsel guaranteed by the Sixth Amendment, the petitioner must present specific facts that, if true, would show that his counsel's performance was deficient and that the defense was prejudiced

---

litigation, but he has not done so.

**Memorandum Decision and Order - 3**

as a result. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). An attorney's representation will be deemed to have been constitutionally deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Id*. at 684, 694. To show prejudice, the petitioner must demonstrate that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id*. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

## III.

## DISCUSSION

Petitioner did not have an evidentiary hearing on any claims of ineffective assistance of counsel in state court because he did not raise them at the correct time under state law. While this Court has since excused Petitioner's default, this does not mean that he is automatically entitled to a hearing in federal court. Rather, he still has a burden to allege specific facts that, if true, would show a Sixth Amendment violation.

Moreover, this habeas case has been pending for well over a decade, and in addition to whatever investigation Petitioner has been pursuing during that time, the Court has already granted him leave to develop the facts to an extent through limited discovery. In particular, early in this proceeding, the Court allowed Petitioner to depose several witnesses, including his trial counsel, Radin and Hart. (Docket No. 53.) Pursuant to a stipulation, Petitioner lodged transcripts of the depositions of his state court attorneys, and the parties have since referred to the testimony contained in the transcripts. (Docket Nos. 93, 226, 237.) Petitioner has also submitted affidavits from Radin and Hart that are relevant to their handling of suppression issues. (Docket Nos. 138 & 139.) Because this evidence relates to many of the allegations of ineffective assistance currently under

consideration and will assist the Court in determining whether a hearing will be necessary, the Court will expand the existing record to include the Radin and Hart deposition transcripts and the affidavits filed January 13, 2000.  *See* Rule 7 of the Rules Governing Section 2254 Cases.

Before reviewing each of Petitioner's specific allegations of ineffective assistance, the Court will first address Petitioner's submission of new evidence, which he claims requires an evidentiary hearing on his "entire IAC claim." (Docket No. 242, p. 2.)

### A.	Ineffective Assistance and the FBI Report

At trial in the Michelbacher matter, forensic scientist Donald Wyckoff testified for the State that semen was discovered on three swabs samples taken from the victim.  Based upon a series of tests, Wyckoff concluded that Petitioner could not be excluded as a possible source of the semen. (Tr., Vol. VII, pp. 1689-91.)  Petitioner has now come forward with evidence that he contends contradicts this conclusion.  Specifically, he recently retained another forensic scientist, Dr. Greg Hampikian, to review a 1987 report from the FBI's crime lab, which had conducted a serological test on the evidence known as PGM subtyping.  Dr. Hampikian has concluded that the FBI report "did absolutely exclude [Petitioner] as a contributor of the semen." (Docket No. 242, Appendix 2, Affidavit of Greg Hampikian, ¶ 6.)

The Court is left to speculate about the relevance of this new evidence to Petitioner's claims of ineffective assistance.  Petitioner has not tied the new facts to any current allegation; though, broadly construed, they may support his contention that his attorneys were ineffective in failing to call a qualified expert to undermine the prosecution's physical evidence.  (Docket No. 175, Claim 17, subpart 22.)  Petitioner has also not provided any factual detail regarding Radin and Hart's

**Memorandum Decision and Order - 5**

review of the FBI report or the serological evidence, but it appears that they had the report before trial and presented the test results to a defense expert at that time.

Moreover, Dr. Hampikian's conclusion may be based on a factual error. He refers to the FBI's subtyping on the biological material on the one swab from which it could obtain a result as "PGMsub 1-" when it was, in fact, "PGMsub 1+." (Hampikian Affidavit, ¶ 8; FBI Report, pp. 1-2.) While PGMsub 1+ does not match Petitioner's known blood sample, it does match Susan Michelbacher's. (FBI Report, p. 1.) Dr. Hampikian does not explain why the result *must* be based upon the perpetrator's semen on the swab rather than possibly reflecting the victim's own biological contribution. Perhaps there is a simple explanation that has not been provided, but Mr. Wyckoff testified at trial that distinctions regarding the source of the material, at least with respect to general PGM typing, could not be made. (Tr., Vol. VII, p. 1778.) In other words, if it cannot be determined whether the FBI's PGMsub 1+ result is from the perpetrator or the victim, then the report would be inconclusive.

Regardless of these shortcomings, the Court is concerned about the new evidence, and its impact on this case. The Court will therefore give Petitioner an opportunity to elaborate on these matters when he files a supplemental brief on the merits of the non-dismissed claims, after which the Court will revisit whether there any material facts remain to be resolved.

**Memorandum Decision and Order - 6**

B.  Claim 17:  Allegations of Ineffective Assistance of Counsel[2]

1.  Failure to Procure an Independent Mental Health Expert at the Guilt Phase

Petitioner first alleges that his counsel failed to present expert testimony on the effect that Petitioner's drug use would have had on his ability to form the specific intent to commit the crimes. This claim can be resolved as a matter of law on the expanded record.

Before trial, the defense retained a psychiatrist, Dr. Kenneth Ash, to review Petitioner's mental state, which included the effect of drug use on his mental processes. Dr. Ash discussed his conclusions with counsel, and John Radin has since testified at his deposition that the decision not to base a defense on this type of mental health evidence was a tactical one:

> We certainly were aware of [Petitioner's] drug use, and as I recall Dr. Ash had some speciality in this field.
>
> * * *
>
> If we had chose to go with the defense that because I was high on drugs you should excuse my conduct in committing these murders, Dr. Ash could have helped us on that probably. But we decided that was not a good viable defense and we were better off going with the defense that he did not commit the crime.
>   Now, let me say, [Petitioner] has maintained his innocence all along, so the fact that we went with the defense that he didn't do it is consistent.

(Radin Depo., pp. 43, 57.)

The record therefore shows that counsel conducted a reasonable investigation into the feasibility of raising a lack of intent defense, based on Petitioner's drug use, and rejected it. Counsel

---

[2] In Claim 14, Petitioner alleges that he was deprived of his constitutional right to conflict-free counsel at trial, post-conviction, and on appeal, based upon Russell Webb's previous representation of a potential suspect in this case. The Court notes that Petitioner has not specifically addressed this claim in his supplemental briefing, nor did he include it in his 1995 evidentiary hearing request. (Docket No. 87.) The Court therefore assumes that Petitioner does not believe that this claim warrants a hearing.

**Memorandum Decision and Order - 7**

instead went with a defense that was consistent with Petitioner's protestations of innocence. This is precisely the type of strategic decision that will not be second-guessed years later in a federal habeas proceeding. *See Strickland*, 466 U.S. at 690 (noting that strategic decisions made after a reasonable investigation are "virtually unchallengeable"); *see also Turk v. White*, 116 F.3d 1264, 1266-67 (9th Cir. 1997) (holding that defense counsel did not have a duty to investigate inconsistent defenses).

Petitioner has also not alleged specific facts upon which a finding of *Strickland* prejudice could rest. Petitioner alludes to evidence of his drug use in the record and to a psychologist's statement that "there is concern [Petitioner] may have been intoxicated with methamphetamine at or around the time of the crimes were reported to have occurred." (Docket No. 242, Appendix 3, Report of Dr. Craig Beaver, p. 5.) But these vague facts are insufficient to establish that had Petitioner's attorneys presented expert testimony on the effect of drug use, there is a reasonable probability of a different outcome on the question of guilt or innocence.

    2.    <u>Failure to Procure an Independent Expert at the Sentencing Hearing</u>

Petitioner next contends that his counsel were ineffective in not developing mental health evidence during the sentencing phase. The record again shows that defense counsel consciously chose not to introduce this type of evidence.

According to Radin, this decision was based on the following considerations: (1) introducing Dr. Ash's testimony would have undermined counsel's attempt to preserve an issue with respect to the trial court's ruling on the insanity defense, presumably because the court would then known that the defense was not factually supported; and (2) counsel viewed evidence of drug use as detrimental, primarily because it would conflict with Petitioner's claim of innocence. (Radin Depo., p. 89.) At

**Memorandum Decision and Order - 8**

his deposition, Hart agreed that the matter had been discussed and resolved, but his view of mitigating evidence had since changed, and he believed that the decision might have been based upon a shortsighted view of mitigation. (Hart Depo., pp. 99-102.)

While the decision not to present mental health evidence at the penalty phase appears to have been a tactical one, there may be some room for debate whether Petitioner's attorneys were fully aware of the breadth of potential mitigating evidence when they exercised their judgment. Even so, Petitioner's request for an evidentiary hearing on this claim suffers from a lack of factual specificity about the allegedly excluded evidence. Indeed, the only facts that Petitioner has proffered are contained in a report from Dr. Craig Beaver, a psychologist who examined Petitioner several years after sentencing. Dr. Beaver does not claim that Petitioner has a mental disease or defect, and he has very little to offer about the effect of drug use on Petitioner's mental state. (Report of Dr. Craig Beaver, pp. 4-5.) Much of the other information contained in the report was already before the sentencing judge. Nevertheless, the Court will reserve its final decision whether the claim can be resolved as a matter of law until Petitioner has had an opportunity to file a supplemental brief on the merits.

      3.      <u>Deficiencies Related to the Investigation of the Insanity Defense</u>

Idaho had recently abolished the insanity defense when Petitioner was charged with these crimes, but Petitioner's attorneys wished to explore his mental condition and possibly challenge the repeal of the defense on constitutional grounds. Defense counsel hired Dr. Ash before trial to develop some of these issues. Dr. Ash was reluctant to provide a firm opinion on sanity without the guidance of a legal standard, which Idaho no longer had, but he apparently did not believe that there was a factual basis for an insanity defense. (Radin Depo., pp. 43-47.)

**Memorandum Decision and Order - 9**

Petitioner now contends that his counsel were ineffective because they "pursued a defense of traditional insanity at trial despite a complete lack of factual basis in support of such defense, statutory repeal of the defense in Idaho, and overwhelming law contradicting this position." (Docket No. 175, p. 37.) Of course, Petitioner cannot complain that his attorneys were deficient in defending the case at trial on insanity grounds, because they did not do so. Rather, he makes a vague argument that their pretrial investigation and development of the matter was deficient. This is not a colorable claim for relief.

Petitioner has not explained why it is unreasonable for counsel to investigate a defendant's mental state before trial and, even if that investigation does not prove to be fruitful, then attempt to preserve a challenge to a recently amended law. Further, even if the Court were to assume that counsel's trial preparation were misdirected, Petitioner has not alleged facts to support a conclusion that, had counsel not pursued the "insanity issue," there is a reasonable probability that the result of the trial or sentencing proceeding would have been different. If Petitioner really means that his attorneys' narrow focus on sanity prevented them from exploring broader mental health issues at trial and sentencing, those are separate allegations that are addressed above.

### 4. Failure to Use Evidence Obtained in Discovery to Support a Motion to Suppress Petitioner's Inculpatory Statements

Petitioner next alleges that his attorneys were ineffective in their handling of a motion to suppress the inculpatory statements that Petitioner made after his arrest in Wells, Nevada. Petitioner claims that his attorneys unreasonably failed to accentuate his drug use and fatigue at the time of his arrest, and that they did not realize the importance of facts contained in Detective Dennis Shaw's police report.

In addition to the facts already contained in the state court record, Petitioner's trial attorneys

**Memorandum Decision and Order - 10**

have addressed this matter in their depositions and affidavits in this proceeding. This claim can be resolved on the expanded record.

     5.     <u>Failure to Challenge the Death Sentence for Kidnapping as Unconstitutional</u>

This claim is linked to the Tenth Ground in the Second Amended Petition, which presents a direct challenge to the death sentence for kidnapping. If Petitioner can show that the death penalty for kidnapping is unconstitutional, then counsel would likely have been ineffective in failing to raise that issue in state court. This is a question of law, and there is no need for a hearing.

     6.     <u>Failure to Raise Claims of Ineffective Assistance During the Post-Conviction Proceeding and Conflict of Interest During that Proceeding</u>

Petitioner's contention that his post-conviction counsel suffered from a conflict of interest or was otherwise ineffective does not state a ground for relief in a federal habeas proceeding. *Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir. 1996); *Leavitt v Arave*, 383 F.3d 809, 839 n.39 (9th Cir. 2004). Also, because Petitioner is being permitted to raise his claims of ineffective assistance now, he cannot show prejudice.

     7.     <u>Failure to Request Meaningful Mitigation Investigation Assistance and Failure to Became Familiar with Petitioner's Background – Claim 17 subparts 8 & 9.</u>

For the same reason that the Court will withhold its final decision with respect to the need for a hearing on Petitioner's related allegations regarding mitigating mental health evidence, it will likewise reserve its decision on these claims.

     8.     <u>The Attorney Who Consulted With the Psychiatric Expert Did Not Make Decisions Regarding that Evidence</u>

Petitioner alleges that the attorney who made the critical decisions regarding the psychiatric evidence was John Radin, but that Radin's partner, Russell Webb, consulted with the expert, Dr. Ash. Petitioner has failed to explain why delegating some responsibility for interacting with an

**Memorandum Decision and Order - 11**

expert witness to a partner in the same law firm amounts to deficient performance or prejudice, particularly because Radin was aware of the substance of Dr. Ash's opinions. (Radin Depo., pp. 43, 57.) This claim is conclusory and does not require a hearing to resolve.

### 9. Failure to Call Expert Witnesses at Trial

Petitioner contends that counsel were ineffective in failing "to call experts" or to present the testimony of their psychiatric expert "on one of the many other psychological issues that should have been explored at trial." (Docket No. 175, p. 42.) To the extent that this claim differs from Petitioner's first allegation regarding his attorneys' handling of expert testimony, which has been addressed, it is conclusory. Petitioner has not provided the substance of any omitted expert testimony or indicated what the "many other psychological issues" would have been.

### 10. Failure to Prevent Petitioner From Being Interrogated Without *Miranda* Warnings at the Presentence Investigation Interview

The Ninth Circuit has held that a presentence interview by a state official is a critical stage of the proceeding at which a defendant has a right to the assistance of counsel under the Sixth Amendment. *Hoffman v. Arave*, 236 F.3d 523, 538-39 (9th Cir. 2001). Assuming Petitioner could prove that his attorneys did not advise Petitioner about his right to silence and did not attend the interview, he has not alleged how this may have affected the outcome of the case. Petitioner refers to statements attributed to him in the presentence report regarding his recreational drug use, but the sentencing judge did not base his decision to impose death sentences upon Petitioner's admission of drug use.

At this time, the Court concludes that there are no material issues of fact to be developed at an evidentiary hearing with respect to this matter.

> 11. <u>Failure to Raise and Argue Dispositive Issues At Sentencing and On Appeal</u>

Petitioner alleges that his counsel failed to (1) require the Idaho Supreme Court to conduct a proportionality review on direct appeal, (2) challenge the constitutionality of the heinous, atrocious, or cruel aggravator ("HAC"), and (3) raise as an issue the "atmosphere in which sentencing in this case took place." (Docket No. 175, p. 42.)

The last allegation is wholly lacking in specificity and does not warrant a hearing. The constitutionality of the HAC aggravator presents a question of law, and whether counsel was ineffective in failing to challenge the aggravator on that basis will likely turn on the resolution of the legal issue. Finally, counsel's performance cannot be deemed to have been unreasonable for failing to remind the Idaho Supreme Court to engage in a proportionality review that it was required to conduct by statute; nor has Petitioner alleged how the outcome of the case might have been altered had counsel specifically included such an issue in his appellate brief.

> 12. <u>Failure to Investigate the Kevin Buchholz Confession In the Bingham County Homicide</u>

When Kevin Buchholz was arrested on a drunk and disorderly charge in Firth, Idaho, he made incriminating statements to police officers that he had killed Stacy Baldwin in Bingham County. Petitioner now alleges that his attorneys were ineffective in their investigation into the Buchholz confession.

The Buchholz issue was fully explored during Petitioner's state post-conviction proceeding. After Stephen Hart was permitted to withdraw, he testified about which police reports related to Buchholz's statements had been disclosed to the defense. (Post-Conviction Tr. pp. 209-226.)

**Memorandum Decision and Order - 13**

Buchholz himself testified, admitting that he had made some of the statements attributed to him, but also claiming that they were untrue and were the product of his intoxication and anger for being arrested. (Post-Conviction Tr., pp. 363-378.) Radin has also addressed this issue in his deposition testimony. (Radin Depo., pp. 75-81.) Accordingly, the circumstances surrounding counsel's investigation into the Buchholz evidence are fully developed, and Petitioner has not come forward with any disputed issues of material fact that need to be resolved at a hearing.

        13.     <u>Failure to Develop an Alibi Defense</u>

This allegation is conclusory. Despite alluding to "numerous witnesses" who could have provided an alibi for Petitioner at or near the time of the Michelbacher abduction, Petitioner does not favor the Court with a list of those witnesses or what their testimonies might have been.

        14.     <u>Failure to Impeach the State's Witnesses</u>

Petitioner appears to contend that his attorneys failed to impeach all of the State's critical witnesses, yet he has not provided any specific examples upon which a finding of deficient performance or prejudice could rest. To the extent that this allegation could be broadly construed to encompass counsel's cross-examination of Donald Wyckoff on testing of the semen samples, which is doubtful, the Court will await Petitioner's explanation of the relevance of the Hampikian evidence before finally resolving whether a hearing will be required.

        15.     <u>Failure to be Prepared or to Present a Defense</u>

These allegations are likewise conclusory. Petitioner's assertion regarding his attorneys' lack of preparation is based upon the allegedly haphazard assignment of duties to each attorney, but Petitioner has provided no facts showing constitutional ineffectiveness. He also asserts that his attorneys "failed to present a defense" because they chose to attempt to create reasonable doubt, but

**Memorandum Decision and Order - 14**

he has offered no alternative defense that his attorneys failed to consider that would have created a reasonable probability of a different outcome.

  16. <u>Counsel's Views Regarding the Sufficiency of the Evidence and the Death Penalty Influenced His Representation</u>

Petitioner contends that the quality of Radin's representation was impacted by his belief that the State had sufficient evidence to support a conviction and a death sentence. This is not a colorable claim. The Sixth Amendment does not require counsel to believe that the prosecution's evidence is insufficient, nor does it demand that counsel be opposed to the death penalty as a theoretical matter, in order to provide effective representation in a capital case. Perhaps more to the point, Petitioner has provided no facts showing that Radin's performance suffered because of any particular belief that he may have held. Radin has testified that although he believed the State had sufficient evidence to convict and seek a death sentence, "we did everything we could to fight the case and fight the death penalty." (Radin Depo., p. 123.)

  17. <u>Counsel Were Not Learned in the Law of Capital Sentencing</u>

Although inexperience may be a relevant factor, it does not, by itself, constitute ineffective assistance of counsel. *Pizzuto v. Arave*, 954 F.2d 1483, 1490-91 (9th Cir. 1993). To the extent that this claim overlaps the allegation regarding mitigation evidence, it has been addressed. Otherwise, it is insufficient to require a hearing.

  18. <u>Deferring Strategic Decisions to Petitioner</u>

Petitioner asserts that his attorneys should not have permitted him to make certain decisions regarding the type of psychological evidence to present in mitigation. Again, to the extent that this claim covers the same ground as Petitioner's other allegations regarding mitigating evidence, it has been addressed.

**Memorandum Decision and Order - 15**

19.     Failure to Present Expert Testimony to Undermine the State's Physical Evidence

Before trial, Petitioner's attorneys consulted with a criminalist, Richard Fox, regarding the State's scientific evidence, which centered on ballistics, fingerprints, hair, and the testing of biological samples. At his deposition, Radin testified that Fox could have helped the defense in some ways, but not in others, and that "we made a tactical decision not to call him." (Radin Depo., p. 71.) Notably, Fox would not have helped to counter the State's ballistics evidence, though he may have provided some marginal assistance in other areas. (Radin Depo., p. 70.)

Based upon this testimony, it is clear that counsel evaluated the utility of this potential evidence within the context of the entire case, and made an informed tactical decision not to use Fox as a witness. Additionally, despite the passage of over fifteen years, Petitioner has failed to show that another expert would have been available to testify about the ballistics, hair, or fingerprint evidence in a manner that would have been favorable to him, or how such evidence could have created a reasonable probability of a different outcome.

With respect to the blood and semen evidence, Petitioner has ostensibly supported this allegation with Dr. Hampikian's opinion. Thus, the Court will leave the evidentiary hearing issue open on this claim, but it is limited solely to whether counsel were ineffective in addressing this particular evidence.

20.     Failure to Call the Medical Examiner

Petitioner alleges that his trial counsel should have called the medical examiner to testify whether he took fingernail scrapings from the victim to counter the implication at trial that scratches on Petitioner's chest were a result of a struggle with the victim. Petitioner has not alleged that the

**Memorandum Decision and Order - 16**

medical examiner actually took fingernail scrapings and, if so, what the results were. In the absence of such an allegation, Petitioner cannot establish deficient performance or prejudice.

21. <u>Failure to Establish a Workable Discovery Procedure</u>

Petitioner's contention that his attorneys' discovery procedure suffered from disarray and confusion is conclusory and does not require a hearing. Even if counsel's organization was less than ideal, Petitioner has not alleged how he suffered prejudice under the *Strickland* test.

22. <u>Failure to Argue or Ensure that the Idaho Supreme Court Fulfilled Its Statutory Responsibilities on Automatic Review</u>

Counsel cannot be faulted for omitting an issue on appeal that the Idaho Supreme Court was required to review on its own. Petitioner has also not shown that if counsel had alerted the state supreme court of its purported failure to review the sentence for passion, prejudice, or any other arbitrary factor, the result of the appeal may have been different.

23. <u>Failure to Argue Residual Doubt as a Mitigating Factor</u>

Contrary to Petitioner's allegation, his counsel did argue residual doubt as a reason to impose a sentence less than death. (Trial Tr., Vol. IX, pp. 2591-92.) What's more, an attorney's decision regarding how to argue a case generally falls within the realm of trial tactics. *Cf. Cone v. Bell*, 535 U.S. 685, 701-02 (2005). Further, Petitioner has not articulated exactly why he believes counsel's argument was deficient, or in what way the argument should have been altered, such that the Court could find a Sixth Amendment violation.

24. <u>Failure to Challenge the Arrest Warrant for Burglary</u>

Petitioner asserts that his attorneys were ineffective in not recognizing that the arrest warrant for an unrelated burglary was a ruse to take Petitioner into custody and get access to the murder

**Memorandum Decision and Order - 17**

weapon. Petitioner has not alleged, though, that probable cause was lacking for the warrant. This claim can be resolved as a matter of law.

25. Cumulative Errors

Finally, Petitioner alleges that cumulative impact of individual errors amounted to a violation of the Sixth and Fourteenth Amendments. This allegation does not exist independently of the other claims of ineffective assistance, and an evidentiary hearing is required only to the extent that a hearing may be required on any of the individual claims.

## IV.

## CONCLUSION

The Court will reserve its ruling whether an evidentiary hearing is necessary for Petitioner's allegations regarding trial counsel's development of mitigating evidence at the sentencing hearing, and trial counsel's handling of the serological evidence. (Claim 17, subparts 2, 8, 9, and 22.) For all other allegations, the Court concludes that Petitioner has failed to show that an evidentiary hearing is mandatory, and the Court declines to exercise its discretion and hold one.

Before this case was delayed, the parties had filed briefs addressing the merits of the non-dismissed claims. (Docket Nos. 77, 108 & 125.) Given the extensive passage of time, the parties shall be permitted to file supplemental briefing on the merits. Such briefing, however, shall truly be supplemental and shall not rehash old arguments. The parties shall also address the relevance of the FBI report and Dr. Hampikian's affidavit to Petitioner's claim of ineffective assistance of counsel.

Because of the age of this case and the briefing already in the record, the Court intends to hold the parties to firm deadlines and will not grant extensions of time absent exceptional

**Memorandum Decision and Order - 18**

circumstances. The filing of any intervening motions will not suspend these deadlines. After the completion of supplemental briefing, the Court will schedule oral argument, if necessary.

## V.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the record in this case will be expanded to include the deposition transcripts of Stephen Hart and John Radin, lodged with the Court on March 19, 1997, and the affidavits of Stephen Hart and John Radin, lodged on January 13, 2000. (Docket Nos. 97, 138, 139.)

IT IS FURTHER ORDERED that Petitioner's request for an evidentiary hearing on all of his claims of ineffective assistance of counsel is denied. The Court reserves its final decision, however, whether a hearing will be required on the limited allegations contained in Claim 17, subparts 2, 8, 9, and 22, as discussed in this Memorandum Decision.

IT IS FURTHER ORDERED that within 35 days of the date of this Order, Petitioner shall file a supplemental brief on the merits of any non-dismissed habeas claims. Within 35 days of receiving Petitioner's brief, Respondent shall file a supplemental brief on the merits. No reply brief shall be filed.

DATED: **May 18, 2006**

Honorable Edward J. Lodge
U. S. District Judge

**Memorandum Decision and Order - 19**